## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

IN RE:                                      )      Bankruptcy Case No. 17 B 11461
                                            )
HARVEY EDELSTEIN                            )      Chapter 13
KATHLEEN MASTRO-EDELSTEIN,                  )
                                            )
                    Debtors.                )      Honorable Janet S. Baer
                                            )

## MEMORANDUM OPINION

This matter is before the Court for ruling on the Motion to Determine Final Cure and Post-Petition Mortgage Amount filed by Harvey Edelstein and Kathleen Mastro-Edelstein (the "Debtors"). The Debtors seek a determination, pursuant to Federal Rule of Bankruptcy Procedure 3002.1(h), that: (1) they have cured their pre-petition mortgage arrears, and (2) the amount of their post-petition mortgage arrears is $5,494.96. For the reasons set forth below, the Debtors' motion will be granted in its entirety.

## JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A).

## BACKGROUND

The material facts in this matter are gleaned from the docket and the pleadings, as well as the exhibits attached thereto. Those facts are as follows.

### History of the Debtors' Chapter 13 Case

On April 11, 2017, the Debtors filed both a voluntary petition for relief under chapter 13 of the Bankruptcy Code and a "Model" chapter 13 plan that was in use at the time of filing. (Dkt. Nos. 1, 2, 38 at 7.[1]) The Debtors' plan proposed to cure the pre-petition arrears owed on their reverse mortgage with Bank of America, N.A. (the "Bank") and to pay ongoing property taxes during the term of the plan. (Dkt. No. 2 at 1, 3, 5.) The plan provided, in relevant part, as follows:

> If the debtor pays the cure amount specified in Paragraph 5 of Section E, while timely making all required postpetition payments, the mortgage will be reinstated according to its original terms, extinguishing any right of the mortgagee to recover any amount alleged to have arisen prior to the filing of the petition.
>
> * * *
>
> 5. *Mortgage arrears.* Payable as set forth below, *regardless of contrary proofs of claim*, except that the arrears payable *may be reduced* either with the consent of the mortgagee or by court order, entered on motion of the debtor with notice to the trustee and the mortgagee. Any such reduction shall be effective 14 days after either the trustee's receipt of a notice of reduction consented to by the mortgagee or the entry of a court order reducing the arrearage.

(*Id.* at 1, 3 (emphasis added).) The amount of pre-petition mortgage arrears listed "as set forth below" was $17,513.56. (*Id.* at 3.)

The day after the Debtors filed their proposed plan, the Bankruptcy Noticing Center certified that it sent a "Notice of [the] Chapter 13 Bankruptcy Case" to the Bank—as well as to several other creditors and interested parties—by electronic transmission. (Dkt. No. 10.) The Bank did not object to the Debtors' proposed plan before it was confirmed on June 9, 2017. (Dkt. No. 15.) Subsequently, however, on July 18, 2017, the Bank timely filed a proof of claim in which it asserted pre-petition arrears of $35,016.96, nearly double the amount listed in the Debtors' confirmed plan. (Claims Reg., No. 8-1; Dkt. No. 49, Ex. B at 2.) Despite the discrepancy between

---

[1] All docket references are to Bankr. No. 17 B 11461.

the figures, the Debtors did not object to the Bank's proof of claim, and the Bank did not appeal or otherwise challenge confirmation of the Debtors' plan.

For approximately fifty-seven months, the Debtors timely made all of their required plan payments. (*See* Dkt. Nos. 2, 37, 38 at 9.) However, they failed to make the property tax payment that was due on September 3, 2021. (Dkt. Nos. 38 at 9, 49 at 4.) As a result, on October 27, 2021, the Bank filed a notice of post-petition mortgage default indicating that the Debtors owed the Bank $5,494.96 for the tax payment advanced by the Bank. (*Id.*)

On January 25, 2022, after the Debtors had made all of their plan payments, the chapter 13 trustee (the "trustee") filed a "Notice of Payment of Final Mortgage Cure" in which he stated that the "amount required to cure the default on the claim ha[d] been paid in full." (Dkt. No. 34.) The Bank responded to the trustee's notice on February 4, 2022, asserting that the Debtors still owed $17,503.40 in pre-petition arrears and $6,345.46 in post-petition arrears. (Dkt. No. 49, Ex. C at 1.) On February 11, 2022, the trustee filed a reply to the Bank's response, stating that he had "administered the mortgage arrears" to the Bank "correctly per the terms" of the Debtors' confirmed plan. (Dkt. No. 36 at 2.) On February 16, 2022, the trustee filed a notice of completion of plan payments, and the Debtors filed the instant motion. (Dkt. Nos. 37, 38.) A discharge order was subsequently entered on February 28, 2022. (Dkt. No. 45.)

### The Debtors' Motion

In the instant motion, the Debtors seek a determination that they have cured their pre-petition mortgage arrearage by paying $17,513.56, the figure reflected in their confirmed plan. (Dkt. No. 38 at 10.) The Debtors also ask the Court to determine that their post-petition mortgage default totals $5,494.96, the amount that the parties agree represents the unpaid real estate tax

payment.[2] (*Id.*) Because the parties do not contest the amount of the post-petition default, the sole issue here is whether the Debtors have cured their pre-petition mortgage arrears.

The Debtors argue that they paid the full amount of the mortgage arrears as required by the plan and that they do not owe the Bank any additional pre-petition arrears. (*See* Dkt. No. 50 at 8–9.) According to the Debtors, the Bank received adequate notice of the plan and did not object to the contents of the plan prior to confirmation. (*Id.* at 5–8.) The Debtors further contend that the order confirming the plan's terms is a final and binding judgment that controls over the Bank's subsequently filed proof of claim. (*Id.* at 8–10.) As a result, the Debtors say, the Bank is not entitled to recover any additional pre-petition arrears. (*See id.* at 7–10.)

The Bank argues, in turn, that it has the right to recover "outside of and after the closing of the [Debtors'] bankruptcy" an additional $17,503.40 in pre-petition arrears, which the Bank alleges remains due and owing after crediting payments it received during the Debtors' case. (Dkt. No. 49 at 6.) According to the Bank, its allowed proof of claim included $35,016.96 in pre-petition arrears, and, as a result, that amount must be paid in full. (*See id.* at 5–7.) The Bank also contends that pursuant to both the language of the Debtors' plan and the Bankruptcy Code, the Bank may be paid less than the pre-petition arrearage amount reflected in its proof of claim only with the Bank's consent or by court order, entered upon motion or claim objection filed by the Debtors. (*Id.* at 5–6.) Here, the Bank says, it did not consent to a reduction of pre-petition arrears, nor did the Court enter an order reducing the amount of the arrearage. (*Id.*)

The Debtors' motion has been fully briefed. Having reviewed all the relevant documents, the arguments of the parties, and the applicable case law, the Court is now ready to rule.

---

[2] The Debtors do not dispute that $5,494.96 is owed for the missed post-petition tax payment. (Dkt. No. 38 at 9.) Similarly, the Bank agrees that the only recoverable post-petition advance is $5,494.96. (Dkt. No. 49 at 7.) According to the Debtors, they have the funds and are able to tender them upon request, but the Bank has refused to accept the money without payment of the disputed pre-petition arrears. (Dkt. Nos. 38 at 10, 50 at 10.)

4

## DISCUSSION

The terms of a confirmed chapter 13 plan "bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan." 11 U.S.C. § 1327(a). In *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260 (2010), the United States Supreme Court held that when a creditor receives adequate notice of a proposed chapter 13 plan and does not object to that plan prior to confirmation, a subsequent confirmation order "remains enforceable and binding." *Id.* at 275 (concluding that the confirmation order was not void, even though the bankruptcy court made "a legal error" by failing to find that the student loan debt imposed an undue hardship). If a plan is confirmed after adequate notice and without objection, enforceability depends on the applicable Bankruptcy Code provisions implicated, a case's procedural posture, and the specific language provided in the plan. *See id.* at 273 n.10; *Reuland v. I.R.S. (In re Reuland)*, 591 B.R. 342, 348–52 (Bankr. N.D. Ill. 2018).

The Bankruptcy Code also provides that a claim, proof of which is timely filed, is deemed allowed, unless a party in interest objects. 11 U.S.C. § 502(a). A properly filed proof of claim "constitute[s] prima facie evidence of the validity and amount of the claim." Fed. R. Bankr. P. 3001(f).

In this matter, it is undisputed that the amount required to cure the pre-petition arrearage is identified as $17,513.56 in the Debtors' chapter 13 plan. (Dkt. No. 2 at 3.) The parties also do not dispute that, after the Debtors' plan was confirmed without objection, the Bank timely and properly filed its proof of claim—asserting $35,016.96 in pre-petition mortgage arrears—and that the Debtors did not object to the claim. (*See* Dkt. Nos. 49 at 6–7, 50 at 8–10.) Thus, whether the

5

Debtors have cured their pre-petition mortgage arrears depends on what governs the issue: the Debtors' confirmed plan or the Bank's allowed proof of claim.

The Seventh Circuit has not addressed the precise issue at bar. However, two of the court's post-*Espinosa* opinions suggest that the Seventh Circuit would likely hold that the pre-petition arrearage amount specified in a confirmed plan controls over a conflicting but allowed proof of claim. *See Bartlett v. Fifth Third Bank*, 619 F. App'x 525, 528 (7th Cir. 2015) (noting that "'a party with adequate notice of a bankruptcy [case] cannot ordinarily attack a confirmed plan'"); *In re Altheimer & Gray*, 601 F.3d 740, 741 (7th Cir. 2010) (explaining that an uncontested claim was "allowed" but that "it [was] too late to change the plan's terms" because a confirmation order had been entered and no one had appealed).

The Seventh Circuit's pre-*Espinosa* decision in *In re Harvey*, 213 F.3d 318 (7th Cir. 2000), also provides insight:

> Forcing parties to raise concerns about the meaning of Chapter 13 filings at the original confirmation proceedings does not impose an unreasonable burden on bankruptcy participants. Quite the contrary—it is perfectly reasonable to expect interested creditors to review the terms of a proposed plan and object if the terms are unacceptable, vague, or ambiguous. As this court said in *In re Pence*, 905 F.2d 1107, 1109 (7th Cir. 1990), a creditor is "not entitled to stick its head in the sand and pretend it would not lose any rights by not participating in the proceedings."

*Id.* at 322. The court further explained that the issue "about which [the *Harvey* creditor] was complaining[3] was . . . readily identifiable during the original confirmation proceedings" and one to which the creditor "should have alerted the bankruptcy court . . . at that time," not over a year later. *Id.* at 323.

---

[3] The issue in *Harvey* was different from the one before this Court. The *Harvey* debtor simultaneously filed both long- and short-form chapter 13 plans, only one of which arguably provided for the stripping of the creditor's lien, and it was unclear to the lower courts and the opposing creditor which plan had been confirmed. *Id.* at 319–23.

Several bankruptcy court decisions from the Northern District of Illinois further support the conclusion that the terms of a confirmed plan control over an allowed proof of claim. The court in *In re Bird*, 624 B.R. 841 (Bankr. N.D. Ill. 2021), for example, recently held that "[t]he binding effect of the [debtor's] confirmed plan trumped [the government creditor's] claim" because that creditor received notice of the plan but never objected to it. *Id.* at 844. The *Bird* court further stated that "*Espinosa* should not be read narrowly, but should be read as 'a robust confirmation that the effect of confirmation under § 1327(a) really means what the Code says.'" *Id.* at 843–44 (quoting the statute's language which provides that chapter 13 plans "bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan"). Other courts have taken the same position, explaining that a creditor's failure to object to a plan at confirmation precludes that creditor from challenging the plan in a subsequent hearing. *See, e.g., In re Morrow*, 495 B.R. 378, 389 (Bankr. N.D. Ill. 2013) (noting that "[a]llowing a creditor to raise issues postconfirmation that should have been brought preconfirmation would severely undermine the principles of finality that are subsumed in the *res judicata* doctrine and the Bankruptcy Code," principles which *Espinosa* reinforced as "they relate to confirmation orders" (internal quotations omitted)). *See also In re Van*, 612 B.R. 893, 903 (Bankr. N.D. Ill. 2020) (stating that "all [the creditor] had to do [to protect her interests] was file . . . proofs of claim . . . and object to confirmation of any plan that failed to give [her claim] "proper treatment"); *McDonald v. Bank Fin. (In re McDonald)*, 336 B.R. 380, 382–84, 387 (Bankr. N.D. Ill. 2006) (finding that a creditor bank was "bound by the arrearage amount specified in the [debtor's] [p]lan that [the bank] did not object to" prior to confirmation and that the bank's timely-filed claim which had never been asserted as an objection to the plan "had no effect" on the confirmed plan).

The Bank does not dispute that it received adequate notice of the Debtors' proposed plan or that it failed to object to the plan before it was confirmed. Nor does the Bank dispute that it failed to appeal the order confirming the plan or otherwise challenge the plan post-confirmation. In fact, more than four years elapsed between the filing and confirmation of the Debtors' plan and the filing of the trustee's notice indicating that the Debtors had cured the pre-petition default in the amount reflected in their confirmed plan. (*See* Dkt. Nos. 2, 15, 3.4) The Bank's failure to challenge the Debtors' plan is critical because it was "perfectly reasonable" to expect the Bank to object to or appeal confirmation of a plan providing for the cure of only about half of the pre-petition arrears that the Bank claims it is owed. *See Harvey*, 213 F.3d at 322. Indeed, the Bank was on notice that the Debtors were proposing to pay thousands of dollars less in pre-petition arrears than the Bank now insists are due. The discrepancy was "readily identifiable" during the original confirmation proceedings, and the burden was on the Bank to alert the Court about the issue, either at the time of the proceedings or post-confirmation with a timely challenge. *See id.* at 323. Accordingly, notwithstanding the Bank's allowed proof of claim, the order confirming the Debtors' plan is a final judgement that binds the Bank to the plan's terms pursuant to *Espinosa*[4] and other applicable authority.

The terms to which the Bank is bound provide for the Debtors' cure of pre-petition mortgage arrears of $17,513.56, "regardless of contrary proofs of claim." (Dkt. No. 2 at 3.) Pursuant to the plan, if the Debtors pay "the cure amount specified" therein "while timely making

---

[4] The Bank's failure to challenge the Debtors' confirmed plan makes the situation in this case more compelling than the one in *Espinosa*, in which the creditor actually sought to set aside as void the confirmation order. *See* 559 U.S. at 269–75. Further, unlike the plan in *Espinosa* which improperly provided for the discharge of student loan interest without a proceeding or finding of undue hardship, the cure of pre-petition mortgage arrears in the Debtors' plan is permitted under the Bankruptcy Code. *Id.* at 275; *Nobelman v. Am. Sav. Bank*, 508 U.S. 324, 330 (1993) (stating that § 1322(b)(5) allows "the debtor to cure prepetition defaults on a home mortgage by paying off arrearages over the life of a plan").

8

all required postpetition payments," the Bank's right to recover additional pre-petition arrears is extinguished. (*Id.* at 1.) The Bank concedes that the Debtors paid the arrearage amount listed in the plan. (*See* Dkt. No. 49 at 6.) The Debtors have also made all of their plan payments,[5] and a discharge order has been entered. (Dkt. Nos. 37, 45.) Because the Debtors have complied with the express terms of their confirmed plan, the Bank is not entitled to recover additional pre-petition arrears.

Finally, the Bank argues that, pursuant to the Debtors' confirmed plan, the pre-petition arrears asserted in its proof of claim can be reduced only with the Bank's consent or by court order, entered upon motion or claim objection filed by the Debtors. (Dkt. No. 49 at 5–6.) In support of this argument, the Bank points to the following plan provision:

> *Mortgage arrears*. Payable as set forth below, regardless of contrary proofs of claim, except that the arrears payable may be reduced either with the consent of the mortgagee or by court order, entered on motion of the debtor with notice to the trustee and the mortgagee. Any such reduction shall be effective 14 days after either the trustee's receipt of a notice of reduction consented to by the mortgagee or the entry of a court order reducing the arrearage.

(Dkt. No. 2 at 3.) The Bank's argument is erroneous. The "payable" arrears to which this language refers is the amount to be paid to the Bank *through the plan*. It is that amount which may be reduced only with the Bank's consent or by court order. The same provision expressly deems irrelevant any amounts in "contrary proofs of claim." Given the language in the confirmed plan and the fact that the Debtors have made all of their required plan payments, the Bank may not recover additional pre-petition arrears.

---

[5] Due to the missed tax payment in September 2021, the Debtors technically did not timely make all required post-petition payments. This fact, however, does not affect the Court's ruling, because: (1) the Bank did not raise the issue; (2) the Bank has allegedly been wrongfully refusing to accept the post-petition arrears without receipt of the additional pre-petition arrears; and (3) the Debtors claim that they are able to tender the post-petition arrearage amount upon request. The Court will direct them to do so in the order that will be entered concurrently with this Memorandum Opinion.

## CONCLUSION

For the foregoing reasons, the Court finds that the Debtors have cured their pre-petition mortgage arrears and that the amount of post-petition arrears owed by the Debtors to the Bank is $5,494.96. As such, the Debtors' motion will be granted in its entirety. A separate order will be entered consistent with this Memorandum Opinion.


Dated: **November 7, 2022**                    **ENTERED**:


Janet S. Baer
United States Bankruptcy Judge

10